1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No.  CV-12-01650-PHX-DGC (SPL) |
| Plaintiff/Respondent, | (No.  CR-08-00932-1-PHX-DGC) |
| vs. | **REPORT AND RECOMMENDATION** |
| Julio Cesar Feliciano, Jr., | |
| Defendant/Movant. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Movant Julio Cesar Feliciana, Jr., who is confined in the U.S. Penitentiary-Big Sandy in Inez, Kentucky, has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (CRDoc. 482, CVDoc. 1).[1]

**BACKGROUND**

On August 19, 2008, a federal grand jury indicted Movant for conspiracy to commit armed bank robbery, armed bank robbery, and use of a firearm during a crime of violence. (CRDoc. 19.) A federal grand jury returned a third superseding indictment against Movant on May 5, 2009, charging him with thirteen felony counts. (CRDoc. 111.)

---

[1]      Documents filed in CV-12-01650-PHX-DGC will be referred to as "CVDoc." Documents filed in the related criminal action, CR-08-00932-1-PHX-DGC, will be referred to as "CRDoc." Documents filed in the related direct appeal, 9th Cir. No. 10-10186, will be referred to as "9th Cir. Doc."

In the third superseding indictment, Movant and six co-defendants were alleged to have been part of a group[2] which committed a series of armed bank robberies in the Phoenix metropolitan area in 2008. (CRDoc. 111.) On August 31, 2009, Counts 12 and 13 were dismissed (CRDoc. 213), and on September 10, 2009, Count 5 was dismissed (CRDoc. 225). The armed bank robberies, as charged in the remaining counts, were as follows:

| Counts | Robbery |
|--------|---------|
| 1-3 | August 12, 2008: Bank of America, 11455 W. Buckeye Road, Avondale |
| 4 | June 17, 2008: First Credit Union, 5770 W. Thunderbird Road, Glendale |
| 6-7 | July 3, 2008: First Credit Union, 5770 W. Thunderbird Road, Glendale |
| 8-9 | July 21, 2008: First Credit Union, 803 E. Devonshire Avenue, Phoenix |
| 10-11 | July 24, 2008:  Meridian Bank, 1675 N. 95th Lane, Phoenix |

Jury trial commenced on these charges on November 10, 2009. (CRDoc. 305.) After seven days of trial, on November 20, 2009, the jury found Movant guilty of all charges: Conspiracy to Commit Armed Bank Robbery, Use of a Firearm During a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 371, 2113 (a) and (d), 924(c)(1)(A) (i, ii) and 2 (Count 1); Armed Bank Robbery and Aiding and Abetting, in violation of 18 U.S.C. §§ 2113(a) and (d) and 2 (Counts 2, 4, 6, 8, 10, 12); and Use of a Firearm During a Crime of Violence and Aiding and Abetting in violation of 18 U.S.C. §§ 924(c)(1)(A)(i, ii) and 2. (CRDoc. 313, 412.) On April 16, 2010, the District Court imposed sentences totaling in combination of 1,277 months of imprisonment, followed by five years of supervised release. (CRDoc. 412.)

On April 21, 2010, Movant filed a timely Notice of Appeal. (CRDoc. 413.) Movant raised one issue on appeal, whether Movant received ineffective assistance when trial counsel conceded Movant's guilt to one of the armed robberies. (9th Cir. Doc. 14.) Movant's convictions and sentences were affirmed, and on January 18, 2012, the Ninth Circuit Court of Appeals (Ninth Circuit) entered its formal mandate.[3] (CRDoc. 481.)

---

[2]      The group was commonly dubbed as the "Wig Bandits." (CVDoc. 5 at 3.)

[3]      The Ninth Circuit declined to review this claim on direct appeal "because the record is insufficiently developed and the legal representation was not so inadequate that it obviously denied Feliciano his Sixth Amendment right to counsel." The Ninth Circuit affirmed "the district court's judgment without prejudice to Feliciano raising this issue in

On August 2, 2012, Movant timely filed the instant Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (CVDoc. 1, CRDoc. 482). Respondent filed a Response on September 17, 2012. (CVDoc. 5, CRDoc. 484.) Movant filed a Reply on December 7, 2012. (CVDoc. 11.)

**DISCUSSION**

In his Motion, Movant raises four grounds for relief.  In Ground One, Movant alleges that he received ineffective assistance when trial counsel: (1) rejected two plea offers without first consulting Movant; (2) admitted Movant's guilt to one count at trial; (3) did not advise Movant of sentencing consequences; (4) failed to present an adequate defense; and (5) did not investigate an allegation of witness perjury before sentencing. In Ground Two, Movant alleges that he received ineffective assistance when trial counsel represented Movant although a conflict of interest existed. In Ground Three, Movant alleges that he received ineffective assistance when appellate counsel failed to raise nonfrivolous claims on direct appeal and refused to petition for writ of certiorari to the Supreme Court. Lastly, in Ground Four, Movant alleges that the government failed to establish that the banks robbed were federally insured. Respondent contends that Movant's claims are either patently false or otherwise lack merit.

**I.     Expansion of the Record and Evidentiary Hearing**

To refute the allegations that trial counsel failed to communicate or distorted material issues, Respondent submits letters of correspondence which purport to be written by Movant to his wife Sabrina Feliciano prior to or during trial. Movant challenges the authenticity of these letters, and requests that the Court hold an evidentiary hearing on the issue.[4]

On habeas review, the record may be expanded to include additional materials

---

a collateral attack on the conviction pursuant to 28 U.S.C. § 2255." (CRDoc. 481.)

[4]     The Court notes that in addition to Movant's letters, Respondent also submits two defense counsel affidavits and a letter authored by trial counsel. Movant does not challenge the authenticity of these documents.

submitted by the parties, including documents, exhibits, affidavits, and letters predating the filing of the motion. See Rule 7, Rules Governing Section 2255 Proceedings. See also, Williams v. Woodford, 384 F.3d 567 (9th Cir. 2004) (a Court need not conduct full evidentiary hearing, but may instead "expand the record ... with discovery and documentary evidence."). A party against whom additional materials are offered must be afforded "an opportunity to admit or deny their correctness." Rule 7(c). However, the court may, but need not, require the authentication of any materials proffered for inclusion in the record. See Rule 7(a), Rules Governing Section 2255 Proceedings.

While Movant argues that some form of authentication must be presented in order to consider the content of the letters,[5] he does not assert that the letters are, in fact, unreliable, inaccurate or erroneous. Rather, Movant only contends that the record is deficient of proof of the chain of custody for the letters since their time of seizure. Because Movant does not specify any basis upon which to question the reliability or accuracy of the letters, nor is any revealed on review by the Court, further authentication is unnecessary. Respondent asserts

> As the "Wig Bandits" case progressed, the incoming and outgoing mail of all defendants who were in federal custody, including co-defendant Sabrina Feliciano (Defendant's wife), was monitored. Undersigned counsel received copies of those letters pursuant to subpoena and has retained those letters. The letters include ones written by Defendant (who also goes by "Junior" or "Jr") to his wife (who also goes by "Nena" and "Bree") during the pendency of his case between April 2009 and December 2009; those that are pertinent to the Motion before this Court are attached to this filing as Exhibit A.

(CVDoc. 5 at 3-4.)

Outside of his own allegations, Movant has not offered any evidence which undermines the reliability of these letters, such as contradictory affidavits. Nor has Movant identified a portion of the criminal transcripts which controvert the letters'

---

[5]     In arguing that Respondents must demonstrate the letters' authenticity, Movant cites to Rules 901 and 1002 of the Federal Rules of Evidence. While the Court may apply the Federal Rules of Criminal Procedure is 2255 proceedings, is it not required to do so. See Rule 12, Rules Governing Section 2255 Proceedings.

content.  Preceding each of the letters which are attached to the Response (CVDoc. 5-1) is a copy of the corresponding envelope. Each envelope indicates the mailing date, the mailing address of the recipient, and the mailing address of the sender (i.e., the mailing address of Movant). There is no visible indication that the letters have been manipulated or otherwise altered. The letters' content is consistent with the other evidence in the record, including the affidavits submitted by Robert Kavanagh and Marc Victor. The Court finds there is no basis upon which to question the authenticity of these letters in the first instance. Therefore, the Court finds it proper to consider these letters on review without holding an evidentiary hearing on the matter.

The Court also concludes that an evidentiary hearing would not otherwise aid in the resolution of Movant's claims. The testimony of Movant or his trial counsel would add little or nothing to the written submissions. "Section 2255 itself 'recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Although the Court recognizes "that when the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive… this is one of those cases in which an issue of credibility may be conclusively decided on the basis of documentary testimony and evidence in the record." See Watts v. United States, 841 F.2d at 277 (internal citation and quotation marks omitted)(noting "[w]hen section 2255 motions are based on alleged occurrences entirely outside the record, which if true would support relief, the court must conduct a hearing on those allegations 'unless, viewing the petition against the record, its allegations do not state a claim for relief or are so patently frivolous or false as to warrant summary dismissal.'") Here, because there is no evidence to support Movant's claims and the evidence in the record is contrary to his allegations, including his own writings, this Court "is able to determine without a hearing that the allegations are without credibility." United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir. 1991).

To earn the right to a hearing, Movant must "allege specific facts which, if true,

would entitle him to relief." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). For the reasons that follow, "the motion and the files and records of the case conclusively show that [Movant] is entitled to no relief." 28 U.S.C. § 2255(b). Therefore, finding that the issues can be conclusively decided on the basis of documentary testimony and evidence in the record, and that Movant is entitled to no relief, the Court concludes that Movant is not entitled to an evidentiary hearing.

## II.       Grounds One through Three

The two-prong test for ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show: (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Under the first prong, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. A defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michael v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The court need not determine whether counsel's performance was deficient before examining whether

1   prejudice resulted from the alleged deficiencies. See Smith v. Robbins, 528 U.S. 259, 286

2   n.14 (2000). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

3   sufficient prejudice, which we expect will often be so, that course should be followed."

4   Id. (quoting Strickland, 466 U.S. at 697).

5   **1.   Trial Counsel's Rejection of Plea Offers**

6   Movant first argues in Ground One that he received ineffective assistance when

7   trial counsel rejected two plea offers. Movant alleges that "on two separate occasions the

8   government expressed their willingness to enter into plea negotiations, however counsel

9   [] rejected both invitations without consulting me… Counsel first mentioned that the

10   government had offered 32 years but said that he had refused the offer. Some time

11   afterwards, he mentioned that the government again made an offer, this time for 25 years

12   but he again rejected the offer." (CVDoc. 1-2 at 2.)[6]

13   "[D]efense counsel has the duty to communicate formal offers from the

14   prosecution to accept a plea on terms and conditions that may be favorable to the

15   accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). Where defense counsel allows

16   an offer "to expire without advising the defendant or allowing him to consider it,"

17   ineffective assistance of counsel may be found. Id. "To show prejudice from ineffective

18   assistance of counsel where a plea offer has lapsed or been rejected because of counsel's

19   deficient performance, defendants must demonstrate a reasonable probability they would

20   have accepted the earlier plea offer had they been afforded effective assistance of

21   counsel." Missouri v. Frye, 132 S.Ct. at 1409. See also Hill v. Lockhart, 474 U.S. 52, 59

22   (1985) (to establish prejudice, defendant must show "a reasonable probability that, but for

23   counsel's errors, he would not have pleaded guilty and would have insisted on going to

24   trial.").

25   Movant's contention that defense counsel failed to advise him of the plea offers is

26   

---

27   [6]   Respondent asserts that the first plea offer was extended to Movant in early 2009,
under which Movant would have been sentenced to a term of 32 years' imprisonment.
28   Respondent further contends that in July 2009, it extended a revised plea offer, which
would stipulate to a range of 25-30 years' imprisonment. (CVDoc. 5 at 3, 5.)

completely unsupported by the record. Movant provides no affidavits or other factual support for his assertions. During a status hearing held on February 17, 2009, the parties addressed plea discussions and the role of discovery as it related to those discussions. (CRDoc. 453 at 6-7.) However, Movant did not question the existence of a plea offer at that time or at subsequent hearings, nor did he raise the issue at the time he alleges he became aware of Counsel's rejection of the plea offers. Movant's contentions, instead, are clearly contradicted by the record. In an affidavit, trial counsel attests that he informed Movant of both plea offers, and rejected those offers at the direction of Movant. (CVDoc. 5-2 at 2.)  In a letter addressed to Movant, dated February 12, 2009, trial counsel memorialized the fact that a plea bargain offer was made, that Defendant was advised of the offer and its precise terms, and that Defendant declined the plea bargain offer. (CVDoc. 5-2 at 6.) Cf. Frye, 132 S. Ct. at 1410 (finding deficient performance where the "record [was] void of any evidence of any effort by trial counsel to communicate the formal offer to Fyre during the offer window, let alone any evidence that Frye's conduct interfered with trial counsel's ability to do so.").

Undoubtedly, Movant would prefer a lesser sentence than the one he received, and he would have achieved that had he accepted one of the plea offers instead of going to trial. However, for same reasons which the Court cannot find Counsel's performance deficient, Movant has likewise not demonstrated prejudice. Prior to sentencing, Movant objected to all sentencing calculations because "he pled not guilty and maintain[ed] his innocence." (CRDoc. 390 at 3.)  At the time of sentencing, Movant maintained his innocence; "I was found guilty, Your Honor, of a lot of crimes. I didn't commit all these crimes… I have no excuse for a lot of these things. I don't know. I didn't do all these things I was found guilty for, Your Honor. That's basically what I got to say." (CRDoc. at 10.) Beyond Movant's letters and counsel's affidavits, the record does not compel that there was a reasonable probability that Movant would have accepted the plea offers. Based on these facts, the Court cannot conclude that counsel's performance fell below an objective standard of reasonableness or that different actions by trial counsel would likely

have resulted in a different outcome. Therefore, Movant does not assert a viable claim for ineffective assistance of counsel and the Court will recommend that it be denied.[7]

### 2.    Trial Counsel's Admission of Guilt

Next, Movant claims in Ground One that he received ineffective assistance when counsel conceded Movant's guilt at trial. During trial counsel's opening and closing statements, he conceded that Movant had participated in the August 12, 2008 robbery. Trial counsel set forth a defense theory that, while the evidence of Movant's guilt of August 12th robbery was strong, there was no such evidence to prove that he was guilty of the remaining robberies. (CRDoc. 476 at 36.) Movant contends trial counsel failed to consult and obtain his consent prior to conceding his guilt at trial, and that counsel's concession served to convict him of the offense without holding the government to its burden.

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." Florida v. Nixon, 543 U.S. 175, 187 (2004) (quoting Strickland, 466 U.S., at 688). A defendant "has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." Id. (internal citations and quotation marks omitted). Under this reasoning, it follows that an attorney's "concession of guilt without consultation or consent is deficient." United States v. Thomas, 417 F.3d 1053, 1056 (9th Cir. 2005). Such deficient performance is also necessarily prejudicial where defense counsel "concedes that there is no reasonable doubt concerning the only factual issues in dispute, [and] the Government has not been held to its burden of persuading the jury that the defendant is guilty." United States v. Swanson, 943 F.2d 1070, 1073 (9th Cir. 1991).

---

[7]    As discussed by Respondent in length (*see* CVDoc. 5), Movant's assertions are also controverted by his own statements. Movant repeatedly expressed in his letters to his wife the terms of the plea offers he had received, and his insistence on proceeding to trial and rejecting his plea offer. (CVDoc. 5-1.)

As noted by the District Court, Movant's "participation in the August 12 robbery is virtually undisputed – he was observed by law enforcement preparing for and committing the robbery, and he was arrested while fleeing." (CRDoc. 187 at 3.) At trial, the prosecution presented that Movant's DNA evidence was found on a wig used in the July 3, 2008 robbery, which prompted law enforcement officers to begin surveillance of Movant's residence. (CRDoc. 457 at 13-14.) The prosecution further presented that Movant and others were under *that* police surveillance when they committed the robbery on August 12, 2008. (CRDoc. 457 at 15 – 64; 98-118; CRDoc. 458 at 8-40.) Video surveillance of the bank robbery was shown at trial. (CRDoc. 457 at 75.) Testimony was presented that Movant was pursued by law enforcement after the robbery and he was apprehended while fleeing from the vehicle in which he had been traveling. (CRDoc. 457 at 15-64; 98-118; CRDoc. 458 at 8-40.) Evidence of the crime was found in the vehicle, in Movant's possession, and in and around the field through which he fled, including a firearm. (CRDoc. 458 at 144 – 157; CRDoc. 468 at 48-87.)

In reviewing this claim, the Court agrees with Respondent that United States v. Thomas, 417 F.3d 1053, 1058 (9th Cir. 2005) is the relevant authority. Counsel's conduct is not presumptively prejudicial and is subject to Strickland's performance and prejudice requirements. As in Thomas, in the instant case,

> Given the multiple charges that [Movant] faced, [trial counsel] could rationally decide to focus on the charges that were more defensible and consequential. [Trial counsel's] concession was not the functional equivalent of a guilty plea, nor did it abandon all meaningful adversarial testing of the prosecution's case, such that it would be Cronic error. His failure to consult and obtain consent in and of itself does not render [trial counsel's] strategic decision presumptively prejudicial. The government was put to its burden of proving [Movant's] guilt beyond a reasonable doubt on all charges, and counsel by no means entirely failed to serve as his advocate.

Thomas, 417 F.3d at 1058-1059 (citing United States v. Cronic, 466 U.S. 648 (1984)).

In light of that evidence, it was reasonable for trial counsel to concede Movant's participation in the August 12th robbery in order to enhance his credibility when arguing

that the prosecution had not satisfied its burden to prove Movant guilty of the other robberies. Cf. Thomas, 417 F.3d at 1058 (finding counsel "had a sensible reason for not contesting Thomas's participation in the UPS robbery: it was, for all practical purposes, incontestible, and he believed that doing so would enhance his credibility on counts where the evidence was somewhat less clear and the penalties significantly greater"). Trial counsel's strategy "attempted to expose the deficiencies in the prosecution's case" with regard to the June and July robberies. Hovey v. Ayers, 458 F.3d 892, 907 (9th Cir. 2006). Trial counsel argued that because of Movant's known participation in the August 12th robbery, the government failed to investigate other viable leads for the remaining robberies and prosecuted Movant with "tunnel vision" and speculation, rather than evidentiary support. (CRDoc. 462 at 110.)

Although the record does not compel that trial counsel failed to obtain Movant's consent prior to conceding his participation (*see* CVDoc. 5-2 at 3), it is not necessary for the Court to resolve this issue because it is clear that Movant cannot satisfy Strickland's prejudice prong. It certainly cannot be said that but for counsel's concession, the outcome of the proceeding would have been different. Given the overwhelming evidence of Movant's participation in the August 12th robbery that was presented a trial, there was not a reasonable probability that the jury would have returned a different verdict if counsel had adopted a different defense theory or used different tactics.

In light of these considerations, the Court concludes that Movant has failed to satisfy the Strickland standard for this ineffective assistance claim, and will therefore recommend that it be denied.

### 3.   Trial Counsel's Failure to Advise of Sentencing Enhancements

In Ground One, Movant next claims that trial counsel provided ineffective assistance when he failed to inform Movant "of the affect multiple 924(c) convictions would have at sentencing after a trial jury rendered a guilty verdict for such offenses." (CVDoc. 1-2 at 2.)[8] This claim is simply unsupported and contrary to the record.  Movant

---

[8]   "[W]hen the government charges more than one § 924(c) offense in a single

has presented nothing beyond his own after the fact assertion to show that counsel failed to advise him regarding potential sentencing consequences should he go to trial. See Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (a "self-serving statement," alone, is insufficient… "[i]f the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer."). In a letter addressed to Movant, dated February 12, 2009, trial counsel states in explicit terms:

> Count 1, conspiracy, carries a penalty of not [m]ore than five years. Counts 2, 4, 6 and 8, armed bank robbery, carry a maximum penalty of 25 years each. Count 3, use of a firearm during crime of violence, carries a minimum mandatory term of 7 years. Counts 5, 7 and 9, use of a firearm during crime of violence, each carry a minimum mandatory term of 25 years. The time for each count of use of a firearm during crime of violence must be consecutive to all other counts. All sentences could be consecutive. It appears that you could receive 187 years if convicted of all counts.

(CV Doc. 5-2 at 6.) In his affidavit, trial counsel asserts that on February 11, 2009, during a jail visit, he verbally advised Mr. Feliciano of the maximum penalty if convicted of all counts, including the effect of 18 U.S.C. § 924(c). (CVDoc. 5-2 at 3.) At the time of sentencing, the Court inquired with Movant whether he understood the sentence that was imposed, to which Movant responded affirmatively.  (CRDoc. 466 at 26.) While Movant expressed his thoughts on counsel's performance, he did not assert that he had not been informed of the potential sentencing consequences of going to trial at that time. (Id.)

Nevertheless, Movant cannot demonstrate, nor does he even allege, that if trial counsel had adequately explained the impact of 18 U.S.C. § 924(c) at sentencing if he

---

indictment, each additional count is to be treated as a 'second or subsequent conviction' for purposes of 18 U.S.C. § 924(c)(1)(C)(i) and therefore carries a mandatory minimum sentence of twenty-five years. Because § 924(c)(1)(D)(ii) requires that 'no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed,' each independent § 924(c) count in the indictment imposes a consecutive sentence in addition to any other sentence imposed, either under § 924(c) or under any other counts for which the defendant has been convicted." United States v. Beltran-Moreno, 556 F.3d 913, 915 (9th Cir. 2009).

1   were found guilty at trial, he would have accepted a plea offer and avoided trial. Finding
2   that Movant has not established that trial counsel's performance was objectively deficient
3   or that the alleged deficiency was prejudicial, the Court will recommend that this claim
4   be denied.

5           **4.      Trial Counsel's Failure to Present Defenses**

6           Next, in Ground One, Movant argues that trial counsel failed to present an
7   adequate defense. While "counsel must investigate relevant defenses… counsel must
8   reasonably select and present a defense." Mickey v. Ayers, 606 F.3d 1223, 1236 (9th Cir.
9   2010). "The law does not require counsel to raise every available nonfrivolous defense."
10  Knowles v. Mirzayance, 556 U.S. 111, 127 (2009). This Court's inquiry is not on what
11  "defense counsel could have presented, [but] whether counsel's actions were reasonable."
12  Turner v. Calderon, 281 F.3d 851, 877 (9th Cir. 2002).

13          First, Movant asserts that his defense was inadequate because counsel failed to call
14  an eye-witness to testify at trial. He claims that "at one robbery there was a witness (man)
15  who[] saw both robbers exit the bank after robbing it… This man had not identified me as
16  one of the two culprits he saw, instead he identified two other people as the bank
17  robbers." (CVDoc. 1-2 at 2-3.) This claim consists of nothing more than a vague
18  assertion that is unsupported by the record.  Movant does not point to the portion of the
19  record which corroborates his allegation, nor specifies the facts to support this claim. For
20  example, Movant has not identified the purported eye-witness or specified *which* bank
21  robbery he observed. In his affidavit, trial counsel states that he "called to trial as
22  witnesses all known witnesses who [he] believed would be helpful to Mr. Feliciano's
23  defense." (CVDoc. 5-2 at 3.) Thus, without more, Movant has not negated the strong
24  presumption that counsel's conduct fell within the wide range of reasonable assistance.
25  Mere conclusory allegations are insufficient to prove that counsel was ineffective. Shah
26  v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989). Likewise, a tactical decision by
27  counsel with which Movant may simply disagree also cannot form the basis of a claim of
28  ineffective assistance of counsel. See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir.

2001).

Second, Movant argues that his defense was inadequate because counsel failed to present an alibi defense. Movant contends that "counsel did not present the alibi defense that [he] had accompanied [his] wife to the doctor's office for her hand, and that [he] was there during one of the robberies." (CVDoc. 1-2 at 3.) Trial counsel's choice to forgo this defense was reasonable given the lack of evidentiary support. Counsel states "[t]hat court appointed investigator Joseph Gorden, at [his] request and direction, thoroughly investigated Mr. Feliciano's alibi claim that he was at the doctor's office (physical therapist) with his wife during the time of one of the bank robberies, but investigator Gordon was unable to corroborate Mr. Feliciano's alibi." (CVDoc. 5-2 at 3.) The testimony of Movant's wife alone would have been unavailing; she was also charged as a party to the armed bank robberies. Movant does not allege that there were other avenues counsel could have investigated to support such defense. Because the only minimal evidence supporting Movant's alibi was his own claim and that of his co-defendant, counsel's decision not to present this defense was not objectively unreasonable.

Third, Movant argues that his defense was inadequate because counsel failed to argue that there was insufficient evidence establishing that the banks were federally insured at the time of the robberies. See United States v. Holloway, 259 F.3d 1199, 1201-02 (9th Cir. 2001) (concluding that evidence of credit union's federal insurance constituted "an essential element of the [federal] crime" of bank robbery). See also Jackson v. Virginia, 443 U.S. 307, 319 (1979) (there is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). Agent Kevin Killigrew, special agent of the FBI, testified at trial on November 20, 2009, that in his investigation of the robberies, he "found out that all those banks in question – or financial institutions in question were insured by the Federal Deposit Insurance Corporation or the National Credit Union Association." (CRDoc. 462 at 33.) See United States v. Hicks, 217 F.3d 1038, 1045 (9th Cir. 2000) ("'uncontradicted

testimony of a bank's insured status can sufficiently support the jury's conclusion that this element was proven beyond a reasonable doubt.'") (quoting <u>United States v. Corbin</u>, 972 F.2d 271, 272 (9th Cir. 1992); <u>U.S. v. Ware</u>, 416 F.3d 1118, 1123 (9th Cir. 2005) (Where there is an *absence of passage of a substantial period of time*, the jury can properly make an inference of coverage may be drawn as to the time of the offenses from the evidence of contemporary coverage).  During Killigrew's testimony, the government offered into evidence the certificate of Federal Deposit Insurance Corporation for the Meridian Bank, the National Credit Union Administration certificate for the First Credit Union, and the Federal Deposit Insurance Corporation certificate for the Bank of America. (CRDoc. 462 at 32 -36.) <u>See</u> <u>United States v. Bellucci</u>, 995 F.2d 157, 160 (9th Cir. 1993) (holding that a bank's FDIC certificate of insurance was sufficient to establish that the bank was insured by the FDIC). Killigrew testified as to which certificate was applicable to each robbery, and affirmed that they were fair and accurate replicas of the insurance certificates that he obtained through his investigation. (CRDoc. 462 at 32-36.) Viewing this record as a whole, there was sufficient evidence to support the element that the banks were federally insured at the time of the robberies. Consequently, Counsel's failure to challenge the sufficiency of this evidence was not clearly unreasonable. Movant has not pointed to any evidence which contradicts Killigrew's testimony or the certificates produced. Because Movant has not shown that the result at trial would have been different had counsel challenged the validity of each bank's certificate, he has not demonstrated that prejudice resulted.

Accordingly, because Movant has failed to satisfy the <u>Strickland</u> standard for this ineffective assistance claim, the Court will recommend that it be denied.

**5.    Trial Counsel's Failure to Investigate**

Lastly, in Ground One, Movant argues trial counsel provided ineffective assistance when he failed to conduct a thorough investigation into a perjury claim prior to sentencing.  In December of 2009, the Court received a letter which purported to have been written by Jamie Hall. The Court held a hearing on the correspondence on January

7, 2010. (CRDoc. 350.) Movant contends that

> after trial but before sentence was imposed, the district court ordered Mr. Kavanagh to investigate the claim that a government's witness (Julie Castillo) confided in a person named Jaime Hall that she had testified falsely against me at trial.   Instead, counsel did not adhere to the court's order since he did not conduct an adequate investigation into this matter.

(CVDoc. 1-2 at 3.) Movant asserts that Julie Castillo confided in Mr. Hall that her "boyfriend was threatening her to make her testify falsely against [Movant] so that they would get a cooperation-agreement." (CVDoc. 1-2 at 3.)

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. This includes a duty to investigate the defendant's "most important defense." Sanders v. Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994). "A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999).

Movant has not demonstrated that counsel failed to make a reasonable investigation of this claim, nor that his decision not to pursue this matter further constituted deficient performance. In his affidavit, trial counsel states "[t]hat in response to the Court's direction, [he] investigated the circumstances described in Mr. Jamie Hall's December 11, 2009 letter to the Court; on February 17, 2010, [he] interviewed Mr. Jaime Hall for approximately two hours at the Lower Buckeye Jail; based on information that Mr. Hall provided to [him], [he] believed that Mr. Hall was clearly lying." (CVDoc. 5-2 at 3.) Counsel arrived at this conclusion because Hall's accounts of the purported contacts with Movant's co-defendants were not plausible. "Mr. Hall was positive that the contact with the defendant occurred while the defendants were out of custody in December 2008; the defendants were in custody in December of 2008; Mr. Hall described to [counsel] his

1    methamphetamine addiction, mental health issues, and lengthy criminal history." (Id.)

2            Movant also fails to show that he was prejudiced by trial counsel's alleged failure

3    to conduct a thorough investigation or present a post-trial defense. At trial, counsel

4    vigorously cross-examined Julie Castillo to challenge the veracity of her testimony before

5    the jury. Castillo testified regarding the charges against her in the indictment, her drug

6    use, her history of domestic violence with co-defendant Francisco Serrano, and most

7    significantly, she testified that her testimony was pursuant to her cooperation plea

8    agreement which led to the dismissal of all but one criminal count against her. (CRDoc.

9    468 at 109-174; 458 at 33- 88.) Castillo also testified that she had previously lied

10   regarding facts in this case, and that she had been receiving threats prior to testifying.

11   (CRDoc. 468 at 169, 174.) Because there was ample reason presented at trial with which

12   to question the truth of Castillo's testimony, Movant has not shown that but for counsel's

13   alleged deficiency that the outcome of the proceedings would have been different.

14   Therefore, Movant does not assert a viable claim for ineffective assistance of counsel and

15   the Court will recommend that it be denied.

### 6.    Trial Counsel's Conflict of Interest

17           In Ground Two, Movant alleges that he received ineffective assistance when trial

18   counsel represented Movant although a conflict of interest existed.  Movant claims that

19   trial counsel had a conflict of interest because two of the police detectives involved in the

20   investigation of his case were counsel's former clients.[9]

21           The right to effective assistance of counsel includes an attorney who does not have

22   a conflict of interest. United States v. Baker, 256 F.3d 855, 859–60 (9th Cir. 2001). In the

23   context of an ineffective assistance of counsel claim based on a conflict of interest,

24   prejudice is presumed if Movant "demonstrates that his counsel labored under an 'actual

25   conflict of interest.'" United States v. Rodrigues, 347 F.3d 818, 823 (9th Cir. 2003)

26   (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). An "actual conflict of interest"

27   ───────────────
     [9]     In appellate counsel's affidavit, the police detectives are named as Detective
28   Montangna and Detective Hovatter. (CVDoc. 5-3 at 2.)

means "*a conflict that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." Id.; Mickens v. Taylor, 535 U.S. 162, 171 (2002) (emphasis in original).

In his affidavit, trial counsel states that he spoke with the government witnesses who he had "previously represented and disclosed the potential conflict; both witnesses waived any potential conflict." (CVDoc. 5-2 at 4.) In his letter to Movant, trial counsel memorialized that he had informed Movant of the potential conflict, and that Movant "nonetheless consent[ed] to [his] continued representation." (CVDoc. 5-2 at 6.) While Movant concedes that the potential conflict was disclosed to him, he claims that he informed counsel that he "did not think he should represent [him] because [he] did not feel he would be capable of alleviating any conflict that exist[ed]…" (CVDoc. 1-2 at 4.) Movant contends that he allowed the representation to continue because counsel "professed that he had everything under control." (Id.)

Movant has not demonstrated that Counsel was laboring under an actual conflict of interest that adversely affected his performance. The record does not show that "counsel was influenced in his basic strategic decisions" by a divided loyalty to his former clients. See United States v. Rodrigues, 347 F.3d at 823 (quoting United States v. Shwayder, 312 F.3d 1109, 1118 (9th Cir. 2002)). Detective Montangna did not testify at trial, nor does Movant claim that his testimony would have been beneficial to the defense. On the second day of trial, November 12, 2009, the prosecution called Detective Hovatter to testify, a detective with the Glendale Police Department's special investigations unit. (CRDoc. 457 at 27.) Detective Hovatter testified regarding his surveillance prior to the August 12, 2008 robbery. (CRDoc. 457 at 27 - 64.) Movant does not claim, nor does the record show, that any conflict which existed impacted the nature of the Detective's testimony. Trial counsel states that he had "no information about that officer that could be used to his detriment and that could assist [Movant's] case." (CVDoc. 5-2 at 5.) Trial counsel "was not ethically restricted from vigorously cross-examining" Detective Hovatter. See United States v. Rodrigues, 347 F.3d at 824. Detective Hovatter's

testimony was consistent with his police report (CVDoc. 5-3 at 2), to which Movant "agreed that the description of the activities just prior to the August 12, 2008 bank robbery was accurate" (CVDoc. 5-2 at 5). Detective Hovatter's testimony was consistent with the evidence otherwise presented regarding the August 12, 2008 robbery. Under these circumstances, counsel's relationship with his former client cannot be said to have had an adverse effect on his ability to advocate on behalf of Movant.

Movant simply alleges that trial counsel had a conflict of interest. He does not offer specific facts which, if true, would indicate that counsel's former relationship with the detectives influenced him "not to pursue a particular litigation strategy" or that a "foregone litigation strategy would have been a viable alternative." See United States v. Rodrigues, 347 F.3d at 824. Because Movant has not shown deficient performance or resulting prejudice, the Court will recommend that Ground Two be denied.

### 7.     Appellate Counsel's Ineffective Assistance

In Ground Three, Movant alleges that appellate counsel provided ineffective assistance when he failed to raise "nonfrivolous issues" on direct appeal and failed to petition for writ of certiorari to the Supreme Court.[10]     In his affidavit, appellate counsel states that his representation and choice of issues to raise were those which were "fully supported" and "represented the best chance of success for Mr. Feliciano in his appeal." (CVDoc. 5-3 at 2.) He further provides that he did not petition certiorari to the Supreme Court because he did not find that there were nonfrivolous claims to raise. (Id.)

"A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court." Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997). Counsel "does not have a constitutional duty to raise all nonfrivolous issues," Pollard v. White, 119 F.3d at 1435, or to "raise every 'colorable' claim." Jones v. Barnes, 463 U.S. 745, 754 (1983). There is no attorney error in refusing

---

[10]     On appeal, Movant was represented by Marc Victor. The Court notes that in Movant's supporting memorandum, however, he refers to appellate counsel as "Mr. Campbell." (CVDoc. 1-2 at 4- 5, 15.)

- 19 -

to raise issues on appeal that have little or no chance of success. <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996). "

Movant claims that he received ineffective assistance when appellate counsel failed to challenge the sufficiency of the evidence that the banks were federally insured. For the same reasons that this Court found no ineffective assistance by trial counsel for not arguing that there was insufficient evidence establishing that the banks were federally insured at the time of the robberies, it also finds no ineffective assistance by appellate counsel for not presenting this claim on appeal. Therefore, appellate counsel's performance was not objectively deficient. Because of the improbability of success on appeal, Movant also cannot meet the prejudice prong of the <u>Strickland</u> test.

Furthermore, appellate counsel's performance was not objectively deficient because he otherwise failed to challenge trial counsel's performance. "Claims of ineffective assistance of counsel are generally inappropriate on direct appeal. Such claims normally should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." <u>United States v. Ross</u>, 206 F.3d 896, 900 (9th Cir. 2000) (internal citations and quotation marks omitted).[11]

Lastly, Defendant argues that appellate counsel provided ineffective assistance of counsel because he failed to file a petition for certiorari. On appeal, the Ninth Circuit denied a motion by appellate counsel to withdraw, stating

> The motion of appellant's appointed counsel, Marc J. Victor, to be relieved as appellant's counsel of record is denied without prejudice to renewal accompanied by a sufficient statement that there are no grounds upon which to seek a petition for a writ of certiorari. <i>See</i> 9th Cir. R. 4-1(e). Counsel is advised that after he advises a client of the right to initiate

---

[11]    The Ninth Circuit Court of Appeals generally reviews "ineffective assistance claims on direct appeal under two circumstances: (1) when the record on appeal is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." <u>United States v. Ross</u>, 206 F.3d 896, 900 (9th Cir. 2000) (internal citations and quotation marks omitted). In the instant case, the Ninth Circuit declined to review Movant's claim on direct appeal because neither prong had been met. (CRDoc. 481.)

> further review, he need not move to be relieved unless the client insists on filing a petition for a writ of certiorari and counsel concludes that there are no non-frivolous grounds for seeking Supreme Court review. *See* 9th Cir. R. 4-1(e).

(9th Cir. Doc. 31.) Movant sent a letter to appellate counsel,[12] stating that he was aware of the request for appointment of new counsel, but nonetheless asked that appellate counsel submit a petition for a writ of certiorari to the Supreme Court on his behalf. (CVDoc. 1-2 at 44.)

There is no constitutional right to counsel for discretionary appeals. <u>Murray v. Giarratano</u>, 492 U.S. 1, 19 (1989); <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1431-33 (9th Cir. 1989). However, Ninth Circuit Rule 4-1(e) provides, in pertinent part, that in post-appeal criminal proceedings,

> If the decision of [the Ninth Circuit] is adverse to the client, in part or in full, counsel, whether appointed or retained, shall, within 14 days after entry of judgment or denial of a petition for rehearing, advise the client of the right to initiate further review by filing a petition for a writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R. 13, 14. If in counsel's considered judgment there are no grounds for seeking Supreme Court review that are non-frivolous and consistent with the standards for filing a petition, *see* Sup. Ct. R. 10, counsel shall further notify the client that counsel intends to move this Court for leave to withdraw as counsel of record if the client insists on filing a petition in violation of Sup. Ct. R. 10.

Even assuming appellate counsel failed to inform Movant of his right to seek certiorari, or that counsel found no nonfrivolous grounds and would again move to withdraw as counsel, Movant has not shown that he was prejudiced by counsel's inaction. Review by the Supreme Court on a writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. Sup. Ct. R. 10. The Ninth Circuit's brief memorandum decision in Movant's case unlikely falls within the "character of the reasons" that the Supreme Court grants review. <u>See id.</u> Movant does not

---

[12] The Court notes that Movant addressed the letter to the attention of Scott Campbell, Esq.. (CVDoc. 1-2 at 44.)

argue prejudice and, perhaps more importantly, provides no argument or evidence to suggest he would have had meritorious claims to raise in a petition for writ of certiorari.

Accordingly, because Movant has failed to satisfy the <u>Strickland</u> standard for this ineffective assistance claim, the Court will recommend Ground Three be denied.

**III.    Ground Four**

In Ground Four, Movant challenges his convictions on the basis that the government did not present sufficient evidence to prove that the banks which were robbed were federally insured. For the reasons previously stated, the Court finds that if viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element that the banks were federally insured at the time of the robberies. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Therefore, the Court finds this claim is without merit and will recommend that Ground Four be denied.

## CONCLUSION

For the foregoing reasons, the Court finds that the claims presented in the Motion fail on the merits.  Movant has not raised facts or issues that entitle him to an evidentiary hearing on his claims. Accordingly, the Court will recommend that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be denied.

**IT IS THEREFORE RECOMMENDED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CRDoc. 482, CVDoc. 1) be **DENIED** and that **CV-12-01650-PHX-DGC (SPL)** be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation

within which to file specific written objections with the Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation.  <u>See</u> Fed. R. Civ. P. 72.

Dated this 29th day of March, 2013.

Honorable Steven P. Logan
United States Magistrate Judge